LACY H. ("Lance") KOONCE, III (admitted *pro hac vice*)
GILI KAREV (Bar Number: 348774)
**KLARIS LAW**
29 Little West 12 St.
New York, NY 10014
Telephone:(917) 612-5861
Email:    lance.koonce@klarislaw.com


KEVIN VICK (Bar Number: 220738)
**JASSY VICK**
355 S Grand Ave #2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Email: kvick@jassyvick.com

Attorneys for Plaintiffs
THE TOLKIEN TRUST
THE TOLKIEN ESTATE LTD

**IN THE UNITED STATES DISTRICT COURT**

**THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| THE TOLKIEN TRUST and THE TOLKIEN ESTATE LTD<br><br>        Plaintiffs,<br>     v.<br>DEMETRIOUS POLYCHRON,<br>        Defendant. | Case No. 2:23-cv-04300-SVW(Ex)<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………..3

INTRODUCTION …………………………………………………….4

ARGUMENT …………………………………………………………5

    A. Legal Standard……………………………………………………5

    B. Defendant's Argument that Plaintiff's Claim is Barred by the
       Statute of Limitations is Frivolous……………………………….6

CONCLUSION………………………………………………………..10

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 4458890 (N.D. Cal. May 4, 2020) ......................................................................... 6

*Bolano v. Grant*, No. 2:22-CV-04531-SVW-KS, 2023 WL 4291980 (C.D. Cal. May 16, 2023) .............................................................................................. 5

*Capitani v. World of Miniature Bears, Inc.*, 552 F. Supp. 3d 781 (M.D. Tenn. 2021) ............................................................................................................ 7

*Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610 (7th Cir. 2014) ............................................................................................................ 7

*Conley v. Gibson,* 355 U.S. 41 (1957) ....................................................................... 4

*Estate of Darger v. Lerner*, No. 22 C 03911, 2023 WL 2664341 (N.D. Ill. March 28, 2023) ....................................................................................................... 7

*Goldberg v. Cameron*, 482 F.Supp.2d 1136 (N.D. Cal. 2007) ................................. 7

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ..................................... 4

*Luna Distributing LLC v. Stoli Group (USA), LLC*, Case No. SA CV 17-1552, 2018 WL………............................................................................................. 5

*Mahon v. Mainsail LLC*, Case No. 20-cv-01523, 2020 WL 4569597 (N.D. Cal. 2020) ............................................................................................................. 7

*Media Rights Technologies, Inc. v. Microsoft Corporation*, 922 F.3d 1014 (9th Cir. 2019) ....................................................................................................... 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014) ........................................................................................ 5

*Salahuddin v. Cuomo*, 861 F.2d, 42 (2nd Cir. 1988) ................................................. 4

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d (C.D. Cal. 2021) ............................................................................................. 7

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878 (C.D. Cal. 2021) ............................................................................................. 5

*Stone v. William*s, 970 F.2d 1043 (2d Cir. 1992) ...................................................... 5

*Wolf v. Travolta*, 167 F.Supp. 3d 1077 (C.D. Cal. 2016) ..................................... 5, 6

**Statutes**

17 U.S.C. § 101 ......................................................................................................... 8

17 U.S.C. §507(b) ..................................................................................................... 4

## I. INTRODUCTION

Mere hours after this Court determined that Demetrious Polychron's book, *The Fellowship of the King*, is an unauthorized derivative work that is not entitled to copyright protection as a matter of law and dismissed Polychron's affirmative copyright infringement claim against the Estate in *Polychron v. Bezos et al*, 23-cv-02831-SVW-E (C.D. Cal. 2023) (the "Related Case") (the "Dismissal Order"), Polychron baselessly attempts to assert that the Estate's affirmative claim against him for that very same copyright infringement is barred by the statute of limitations.[1] This argument is remarkable not only for its complete misunderstanding of the law, but also for the fact that it appears to be filed for the sole purpose of creating delay and forcing the Estate to incur additional expenses. Had Defendant conducted even a superficial review of the applicable law, he would have discovered that the Estate is well within the statute of limitations and that his argument does not contain a shred of legal merit. For the reasons discussed in more detail below, Defendant's motion to dismiss should therefore be denied.

## II. ARGUMENT

### A. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must decide whether the facts alleged in the Complaint, if true, would entitle the Plaintiff to some legal remedy. Unless the answer is an unequivocal "no", the motion must be denied. *Conley v. Gibson,* 355 U.S. 41 (1957). Dismissal is therefore reserved only for those cases in which "the complaint is so confused, ambiguous, vague, or other unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d, 42 (2nd Cir. 1988). The Related Case was one such example.

---

[1] Plaintiffs intend to file a motion for summary judgment in this case in light of the Court's decision in the Related Case and the blatantly infringing nature of Defendant's work, and are scheduled to hold a meet-and-confer call with Defendant's counsel on August 22, 2023 regarding that motion.

Further, for a defendant to successfully raise a statute of limitations defense in a motion to dismiss, the defense must be "clear from the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Luna Distributing LLC v. Stoli Group (USA), LLC*, Case No. SA CV 17-1552, 2018 WL 5099277, *7 (C.D. Cal. July 10, 2018).

### B. Defendant's Argument that Plaintiff's Claim is Barred by the Statute of Limitations is Frivolous

> **Commented [A1]:** Weird spacing here

Under the Copyright Act, an infringement claim must be commenced within three years after the claim accrues. 17 U.S.C. §507(b). In this Circuit, "accrual" occurs at the time the Plaintiff discovers the infringement (*i.e.*, the violation of any of the exclusive rights of the copyright owner). *Bolano v. Grant*, No. 2:22-CV-04531-SVW-KS, 2023 WL 4291980 (C.D. Cal. May 16, 2023); *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 886-87 (C.D. Cal. 2021).

Under the "separate accrual" rule and clear Supreme Court precedent, when a defendant commits successive violations of copyright law, each infringing act starts a new three-year limitations period. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 134 S. Ct. 1962, 1969, 188 L. Ed. 2d 979 (2014) ("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs."); *see also Stone v. William*s, 970 F.2d 1043 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

Though he pays lip service to *Petrella* in his brief, MTD at 5, Defendant appears to misunderstand the holding in that case and its application to the facts here. His argument rests on the notion that "continuing the same act as the initial injury does not begin the accrual of statute of limitations," *Id.* (citing *Wolf v. Travolta*, 167 F.Supp. 3d 1077, 1099 (C.D. Cal. 2016)). But here, under any reasonable interpretation of the facts, Defendant's act of placing his infringing book on sale to

the public for the very first time in September 2022 – a different version than the unpublished manuscript he tried to give Simon Tolkien in 2019 – was *not* a continuing act of infringement. Rather, it was a new act of infringement, constituting separately accruing harm, that falls well within the limitations period.

As this Court recently held in *Bolano v. Grant*, where a defendant argues that there has only been a single, continuing infringement, "[b]efore the Court discusses the timeliness of Plaintiffs' claims under the discovery rule, the Court must address whether Plaintiffs' claims are for a single instance of infringement or multiple, separate instances of infringement, triggering the separate-accrual rule." 2023 WL 4291980, at *2. In *Bolano*, where the infringing act was the initial posting of a YouTube video that had subsequently been streamed numerous times by viewers, the Court held that "in the context of copyright infringement that has occurred online, Courts have held that 'the mere fact that a document remained online does not trigger the separate-accrual rule.'" *Id.* at 3 (*citing Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 4458890, at *5, n.3 (N.D. Cal. May 4, 2020)). The Court went on to note that "[t]o hold otherwise would render the statute of limitations meaningless in the context of *online infringement*." *Id*, emphasis added. The *Bolano* approach makes eminent sense in the context of what is essentially a single act of infringement – that of initially posting infringing content online – where a defendant has taken no further affirmative steps to exploit that content (that is, no additional infringing acts), but the content is accessed multiple times by users.

In citing *Wolf v. Travolta,* 167 F.Supp. 3d 1077, 1099 (C.D. Cal. 2016) Defendant in this case attempts to bring his multiple, successive infringing acts within the scope of modern Internet cases like *Bolano.* But both *Bolano* and *Wolf* stand only for the narrow proposition that the mere continued presence of infringing material *online* may constitute ongoing harm from the past, single violation caused by the initial posting, rather than a new violation that restarts the limitations clock.

The hand delivery of an unpublished, print manuscript to a private individual who never read and returned the manuscript, followed by the subsequent amendment, publication, distribution and sale of a different version of that manuscript by Defendant, is not the equivalent of posting an infringing work on the Internet and taking no subsequent affirmative steps with respect to that work.

Under applicable precedent, there is no question that *each* reproduction and distribution of an infringing work constitutes a new infringing act. *See Petrella*, at 671; *Media Rights Technologies, Inc. v. Microsoft Corporation*, 922 F.3d 1014, 1022-23 (9th Cir. 2019) (*citing Petrella*) (noting that each "a new cause of action for copyright infringement accrued each time Microsoft sold an allegedly infringing product"); *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 886 (C.D. Cal. 2021) ("it is widely recognized that [when] a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period."); *see also Capitani v. World of Miniature Bears, Inc*., 552 F. Supp. 3d 781 (M.D. Tenn. 2021) (infringement claim accrued for each individual sale of infringing work by seller of product that contained illustration copyrighted by artist).

In cases, as here, where a plaintiff has plausibly alleged successive, discrete acts of infringement within the three years before suit is commenced, courts have had no difficulty rejecting a motion to dismiss on statute of limitations grounds. *See Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1149 (N.D. Cal. 2007) (rejecting dismissal of claim on statute of limitations grounds where complaint pled infringements beyond the release of initial *Terminator* film "such as the release of the Terminator movies on DVD, the release of video games based on the Terminator movies, and the use of plaintiff's works to develop Terminator 3"); *Estate of Darger v. Lerner*, No. 22 C 03911, 2023 WL 2664341, *4 (N.D. Ill. March 28, 2023)

(rejecting statute of limitations defense where "[t]he Complaint not only alleges that the Lerners infringed the copyrights upon Darger's death 50 years ago, but also that Defendants continue to hold themselves out as owners of Darger's copyrights and to "distribute, provide, market, advertise, promote, copy, exhibit, reproduce, and offer for sale" Darger's works"); *Mahon v. Mainsail LLC*, Case No. 20-cv-01523, 2020 WL 4569597, *5 (N.D. Cal. 2020) (additional acts of distribution of film during limitations period cognizable); *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 616 (7th Cir. 2014) (finding "the complaint contains allegations of infringing acts that occurred within [limitations period because it] alleges that Perres, Golden, and Wilson distributed the infringing blueprints to building inspectors during inspections in July 2009 and periodically thereafter, through January 2012").

In order to argue that there was a single infringement here, Defendant must twist the facts beyond recognition. Defendant argues that the initial infringement was discovered by the Estate on December 24, 2019, when Defendant hand-delivered his manuscript to Simon Tolkien's personal residence: "By Plaintiffs' own admission, Pollychron's [sic] work was *published* and offered for sale on December 24, 2019, when Polychron offered to collaborate with the Plaintiffs on the work, over three years before the date Plaintiffs allege and over four years before the filing of this lawsuit. [Compl. 28]." (Emphasis in original), MTD at 5. Putting aside the fact that Simon Tolkien is not even a party to this current lawsuit, the Estate admits no such thing. At paragraph 28 of the Complaint, the Estate alleges only that Defendant sent a copy of his manuscript to Simon Tolkien, who "did not read the manuscript and instead mailed it back to Defendant in a self-addressed stamped envelope which the Defendant had provided." Nowhere in the Complaint do Plaintiffs allege that this constituted a "publication" of such manuscript, let alone a sale.

As noted in Defendant's motion, publication is a term of art under the Copyright Act, defined as "the distribution of copies or phonorecords of a work *to*

*the public by sale or other transfer* of ownership, or by rental, lease, or lending." 17 U.S.C. § 101, emphasis added, MTD at 4. Defendant does not, and cannot, provide any rationale as to why the Court should consider a single private individual as equivalent to "the public," or the voluntary, free delivery of an unpublished manuscript work to another, who then returns it unopened, as a "sale."

In any event, even if Defendant infringed Plaintiffs' copyright in 2019 by handing a single copy of one version of his manuscript to Simon Tolkien, his separate, additional acts of infringement beginning in September 2022[2] with the publication and sale of a *different* version do not constitute a continuing act of infringement. Each sale of a new copy of the book, in print or digital form, through the multiple retailers he engaged to sell his book, constitutes a separate act of infringement within the limitations period. Further, as compared with his delivery of a manuscript to one individual associated with the Estate, his publication and sales of a finished book at $17.99 to $26.99 to the general public caused real and separate financial harm to the Estate.

Thus, even if a cause of action technically could have arisen in 2019 for Plaintiff's authoring of the earlier manuscript, the Estate was not obligated to bring a suit over the mere existence of an infringing work in unpublished form, *especially* where it had informed Plaintiff in no uncertain terms that it would not give him permission to publish his work, and expected him to honor the Estate's wishes. However, by alleging that Defendant later "began selling and advertising for sale the Infringing Work on the "Fractal Books" website and other online platforms" – a fact of which Plaintiffs first became aware on March 7, 2023 (Compl. at 29-30) – Plaintiffs have more than plausibly alleged discrete, independent acts of infringement taking place within the three-year limitations period preceding the date that Plaintiffs filed this lawsuit, on June 1, 2023.

---

[2] *See* https://www.fractalbooks.com (*The Fellowship of the King* will be "In-Stores & Streaming September 22, 2022").

### III. CONCLUSION

This Court should deny Defendant's motion for the reasons set out above.

Dated: August 21, 2023  Respectfully submitted,

/s/ Lacy H. Koonce, IIII
Lacy H. Koonce, IIII
Gili Karev
KLARIS LAW PLLC
29 Little W 12th Street
New York, NY 10014
Telephone: (917) 612-5861
Email:
lance.koonce@klarislaw.com

Kevin Vick
**JASSY VICK**
355 S Grand Ave #2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Email: kvick@jassyvick.com

*Attorneys for Plaintiffs the Tolkien Estate and the Tolkien Trust Limited*