
1  LACY H. ("Lance") KOONCE, III (admitted *pro hac vice*)
   GILI KAREV (Bar Number: 348774)
2  **KLARIS LAW PLLC**
   29 Little West 12 St.
3  New York, NY 10014
4  Telephone:(917) 612-5861
   Email: lance.koonce@klarislaw.com
5

6

7  KEVIN VICK (Bar Number: 220738)
   **JASSY VICK CAROLAN LLP**
8  355 S Grand Ave #2450
   Los Angeles, CA 90071
9  Telephone: (310) 870-7048
10 Email: kvick@jassyvick.com

11 Attorneys for Plaintiffs the Tolkien Trust and the Tolkien Estate Limited.

**IN THE UNITED STATES DISTRICT COURT**

**THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| THE TOLKIEN TRUST and THE TOLKIEN ESTATE LTD, <br><br> Plaintiffs, <br><br> v. <br><br> DEMETRIOUS POLYCHRON, <br><br> Defendant. | Case No. 2:23-cv-04300-SVW(Ex) <br><br> **PLAINTIFFS THE TOLKIEN TRUST AND THE TOLKIEN ESTATE LIMITED'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

In its Scheduling Notice dated November 21, 2023 (ECF No. 43), the Court indicated that "[w]hile the Court thinks that issue preclusion may be appropriate here," Plaintiffs were to "file a reply brief addressing Defendants arguments that there are questions of material fact in dispute on the question of infringement." Plaintiffs limit this Reply to the issue specifically raised by the Court.

**A. Defendant Has Not Raised Any Material Disputed Facts**

As a threshold matter, under Local Rule 56-2, "[a]ny party who opposes a motion for summary judgment [must] serve and file with the opposing papers a separate "Statement of Genuine Disputes" setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated. This Statement must include two columns, setting forth in the left-hand column every fact included in the moving party's Statement of Uncontroverted Facts (in the same order, using the same numbers, and with all citations to the supporting evidence identified by the moving party) and indicating for each such fact in the right-hand column whether the opposing party contends that a genuine dispute necessary to be litigated exists as to that fact. For each disputed fact, the Statement of Genuine Disputes must provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."

Defendant has ignored the local rules, failing to file a Statement of Genuine Disputes in response to Plaintiffs' Statement of Uncontroverted Facts (ECF No. 31), and thus has not properly placed before the court any material facts in dispute. Even setting aside the local rules (which he cannot), Defendant is required under the federal rules to present *specific* facts showing that there is a genuine dispute for trial. Fed. R. Civ. Pro. 56(a). *Am. Student Fin. Grp., Inc. v. Dade Med. Coll., Inc.*, 180 F. Supp. 3d 671, 678 (S.D. Cal. 2015), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party must "by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party […] and "cannot oppose a properly supported summary judgment motion by 'rest[ing] on mere allegations or denials of his pleadings'").

Here, although Defendant nominally claims that "material facts are in dispute", *see* Defendant's Opposition to Motion for Summary Judgment ("Opp. To MSJ") at *6, he fails to identify a single such disputed fact. Rather, Defendant states in vague and conclusory fashion in his brief that there are "material facts regarding the similarity and potential infringement of TLOTR by TFOTK" because "Defendant, through his concurrently submitted declaration, identifies his book as an 'original, with new magical races, enchanted rings, and magical worlds.'" *Id.*; *see also* Declaration of Demetrious Polychron, dated September 25, 2023 ("Polychron Decl."), ¶ 3. Defendant then states that material facts exist because he "disputes that the characters in his book are the same as that in the LOTR, specifically calling out the complexity and transformation he has given them to make them original.[1]" *Id.* In his declaration, Defendant then says, "I developed a wholly original book and concept for The Fellowship of the King … including separate and distinct characters and storylines from The Lord of the Rings … series" (¶ 2) and that "any characters with the same name as any character in TLOTR, have been so transformed as they are essentially new characters altogether" (¶ 4).

Nowhere in his papers does Defendant specifically identify *any* new "magical races, enchanted rings, [or] magical worlds." Nor does he identify *any* characters or storylines that are "separate and distinct" from TLOTR, much less any that he has "transformed" as that term is understood in copyright law. This abject failure to present any facts on point fatally undermines Defendant's claim that there are

---

[1] Notably, Defendant does not dispute that Plaintiffs own a valid and exclusive copyright in and to *The Lord of the Rings*, or that Defendant authored the Infringing Work. *See* Compl. ¶¶ 17, 68-70; Plaintiffs' Motion for Summary Judgment ("MSJ") at *10; Polychron Decl. ¶ 2.

material facts in dispute. Defendant apparently expects the Court to scour his work and compare it against TLOTR and attempt to find original material that is not duplicative or derivative of Professor Tolkien's original material. This is not the job of the Court.[2] In any event, as discussed below, even if Polychron's work contained some original material, this would not change the result here.

**B. The Court Considered and Rejected Defendant's Arguments in the Related Case**

This motion comes before the Court in an admittedly unusual posture. In the typical copyright infringement case in this Circuit, it is the defendant who moves for summary judgment, claiming that the plaintiff has not presented sufficient evidence to demonstrate substantial similarity under the "extrinsic test" for infringement. If the plaintiff overcomes this obstacle, the question of substantial similarity under the "intrinsic test" is then considered by a jury. *See*, *e.g.*, *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017).

Here, by contrast, after the Estate sent a cease-and-desist letter to Defendant regarding his unauthorized sequel to *The Lord of the Rings* ("TLOTR"), Defendant precipitously filed a baseless lawsuit against the Estate and others claiming that his unauthorized book was somehow infringed by an authorized prequel television series. *Polychron v. Bezos et al.*, 23-cv-02831-SVW-E (C.D. Cal. 2023) (the "Related Case"). The Estate then filed the instant action for infringement against Defendant. Given this sequence of events, the issue of whether Defendant's book was an unauthorized derivative of TLOTR was first decided in the Related Case, in the context of a successful argument by the defendants in that case, including the

---

[2] See *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading ITOW's brief, one wonders if ITOW, in its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of ITOW's claim. As the Seventh Circuit observed in its now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

1   Estate, that Polychron held no copyright in his derivative work. Related Case, ECF
2   Nos. 35, 42 and 47 (holding that "Plaintiff's work is an unauthorized derivative work
3   that is not entitled to copyright protection"). As the Court explained:

> Usually a court would be required to undertake the extensive comparisons under the ... substantial similarity test to determine whether [Plaintiff's] work is a derivative work…. However, in this case, [Plaintiff] has bodily appropriated the [*Lord of the Rings*] characters in his [novel]. This Court need not determine whether the characters in [Plaintiff's work] are substantially similar to [Defendants'] characters, as it is uncontroverted that the characters were lifted lock, stock, and barrel from *[The Lord of the Rings]*….
>
> Here, Plaintiff has admitted that the characters were taken directly from *the Lord of the Rings* in his correspondence with Simon Tolkien and the Tolkien Estate. He has also admitted that his series is intended to be a sequel to *The Lord of the Rings*, so every plot point flows from the ending of the *Lord of the Rings* series—thereby continuing the story of what would happen to the rings, the original characters, and their children….

[Related Case, ECF No. 47, at *7 ("Dismissal Order") (citing *Anderson v. Stallone*, 1989 WL 206431, at *8)].

In the Related Case, Polychron made the same argument that he makes here: That he created original material for his book, rendering it non-infringing. However, the Court flatly rejected "Plaintiff's contention that the fact that his work contains different plot and character elements as the original means it is not an unlawful derivative work." Dismissal Order, at *8. Just as here, he provided no evidence of any such original material, other than pointing generally to his book. The Court noted that although there may be "some question in the case law as to whether the derivative work's original elements may be protected," this had no impact on a claim where "Plaintiff's work is intended to be a literal continuation of a copyrighted work, but was not authorized to use the Tolkien intellectual property, and Plaintiff has sued the original creators." *Id*.

Nor does this question have any impact on the Estate's affirmative claim for infringement in this action. The question before the Court is not whether there might be some original material in Plaintiff's work, but whether his work as a whole infringes the Estate's copyright interest in TLOTR and must be enjoined.[3] Indeed, sequels almost always contain at least some new material, and the very definition of a "derivative work" under the Copyright Act contemplates that such a work will include "editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent[s] an original work of authorship." 7 U.S.C. § 106(2). Nevertheless, if made without permission of the original author, such a work is infringing. Because Polychron has admitted that his novel is a sequel, and the Court has held that it is thus an unlawful derivative, Defendant has committed copyright infringement. The Court correctly found that "Plaintiff is mistaken that adding new characters and settings means his work is not an unauthorized derivative," and correctly rejected "Plaintiff's contention that the fact that his work contains different plot and character elements as the original means it is not an unlawful derivative work" Related Case, *8 (*citing Salinger v. Colting*, 641 F. Supp. 2d 250, 254 (S.D.N.Y. 2009), *vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010)).[4]

---

[3] As noted in the Estate's opening brief, the Estate is not seeking damages but rather only an injunction of Defendant's further exploitation of the Infringing Work. ECF No. 30, at *2, 7.

[4] The only way in which an unauthorized derivative *might* be deemed non-infringing is if it is a fair use, but Defendant does not argue in his Opposition, or raise any material facts suggesting, that his work is a fair use, nor can he. Plaintiffs are unaware of *any* U.S. case that has *ever* held that a sequel to another work of literature, made without authorization, was a fair use. Sequels are set in the same fictional universe, continue previous storylines, use existing characters, and exploit other elements of the original work, as described in detail in the Complaint (*see* ¶¶ 31-55), and this is why, as noted, an author of an unauthorized derivative cannot claim a copyright interest in such a work at all. The Supreme Court also has recently made clear that even transformative changes to an original work will not constitute a fair use if the works "share substantially the same purpose, and the use is of a commercial nature," as is unquestionably the case here. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 550, 143 S. Ct. 1258, 1287 (2023).

1        As such, this Court has already determined the dispositive issue on this
2   motion, which is that Polychron's work is an unauthorized, and thus infringing,
3   derivative.  Under the doctrine of collateral estoppel, a final judgment on the merits
4   precludes the parties from relitigating issues that were or could have been raised in
5   a prior action. *Allen v. McCurry*, 449 U.S. 90 (1980). The requirement that an issue
6   be "actually litigated" for collateral estoppel purposes simply requires that the issue
7   is "raised, contested by the parties, submitted for determination by the court, and
8   determined. 'Actually litigated' does not mean thoroughly litigated, but only that the
9   parties disputed the issue, and the trier of fact resolved it. It can be satisfied even if
10  only a slight amount of evidence was presented on the disputed matter decided in
11  the first suit." *Janjua v. Neufeld,* 2017 U.S. Dist. LEXIS 104519, *1.

12       There is no question that the issue of whether the Infringing Work is an
13  infringing derivative as a matter of law was "actually litigated" in the prior
14  proceeding, as the Court clearly held that Polychron's work was an "unlawful
15  derivative work." Dismissal Order, at *7. The issue was raised, contested, submitted
16  for determination by the court, and determined. *See* Related Case ECF Nos. 1, 31,
17  35, 42, 44, 45, 47, and 50. In finding that Polychron did not own copyright in the
18  Infringing Work because it was an infringing derivative as a matter of law and he
19  could not therefore state a claim for copyright infringement, the Parties "disputed
20  the issue" of whether the work was infringing, and the Court "resolved it". ECF No.
21  47 at *10.  Defendant could have addressed Plaintiffs' claims that the Infringing
22  Work incorporates a multitude of characters, settings, storylines, and other
23  protectable elements from TLOTR, rendering it a clear derivative sequel. He cannot
24  now complain that this issue was not already litigated in the prior proceedings when
25  he merely squandered his opportunity to do so in a timely way.

26       Here, there is no need for the Court or a jury to engage in a further analysis of
27  substantial similarity. The fact that the work already has been found to be an
28

unlawful derivative is fully dispositive of that issue in this case, and Defendant has raised no material facts that alter this result.

### C. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that their motion for summary judgment and a permanent injunction be granted.

Dated: December 4, 2023                         Respectfully submitted,

/s/ Lacy H. Koonce, III
Lacy H. Koonce, III
Gili Karev
**KLARIS LAW PLLC**
430 W 14th Street
New York, NY 10014
Telephone: (917) 612-5861
Lance.koonce@klarislaw.com

Kevin Vick
**JASSY VICK CAROLAN LLP**
355 S Grand Ave #2450
Los Angeles, CA 90071
Telephone:(310) 870-7048
kvick@jassyvick.com

*Attorneys for Plaintiffs*
*the Tolkien Estate and*
*the Tolkien Trust Limited*